UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM VILLA; VILLA REALTY, INC. DBA ACCION MORTGAGE; PATRICIA VILLA; AND ACCLAIM FINANCIAL SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GRETCHEN HELLER; WILLIAM HELLAR; DIANE HELLAR, HELLAR CHARITABLE REMAINDER TRUST; STEPHANIE RUIZ; MICHAEL LUSBY; COLLIN COOK; AMERICAN CONTRACTORS INDEMNITY COMPANY; AND DOES 1-7,<br><br>Defendants. | Civil No.   10cv1885-AJB(WMC)<br><br>**ORDER GRANTING DEFENDANT WILLIAM HELLAR'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT WILLIAM HELLAR'S MOTION FOR SANCTIONS**<br><br>**[Doc. Nos. 76, 80.]** |

Before the Court is Defendant William Hellar's motion for summary judgment filed on May 14, 2012. (Dkt. No. 76.) Plaintiffs William Villa, Patricia Villa, Acclaim Financial Services, Inc. and Villa Realty, Inc. filed an opposition on June 25, 2012. (Dkt. Nos. 86, 88, 89.) Defendant filed a reply on July 9, 2012. (Dkt. No. 93.) In addition, on May 22, 2012, Defendant William Hellar filed a motion for sanctions. (Dkt. No. 80.) Plaintiffs filed an opposition on July 3, 2012. (Dkt. No. 91.) Defendant filed a reply on July 16, 2012. (Dkt. No. 94.) The motions are submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After a thorough review of the papers, supporting documentation, and applicable law, the Court GRANTS Defendant William Hellar's motion for summary judgment and DENIES Defendant William Hellar's motion for sanctions.

**Procedural Background**

On September 9, 2010, Plaintiffs William Villa; Villa Realty, Inc. dba Accion Mortgage; Patricia Villa; and Acclaim Financial Services, Inc. ("AFSI") filed a complaint against Defendants Gretchen Heller; William Hellar; Diane Hellar, Hellar Charitable Remainder Trust; Stephanie Ruiz; Michael Lusby; Collin Cook; and American Contractors Indemnity Company ("ACIC") and Does 1-7.[1] Does 1-7 are identified as Defendants Lanak & Hanna, P.C.; Peter Carman; Adam Pessin; Randy Rinicella; William Whamond; Jeannie Kim; and Rajat Bhasin. (Compl. ¶¶ 11, 13.) On June 7, 2011, the Court granted Defendants Cook, ACIC, Peter Carman, Adam Pessin, Randy Rinicella, William Whamond, Jeannie Kim, Rajat Bhasin, and Lanak & Hanna's motion to dismiss; *sua sponte* dismissed certain claims against Defendants Michael Lusby, Gretchen Hellar, William Hellar; and Diane Hellar Hellar Charitable Remainder Trust; and denied moving Defendants' motion for sanctions. (Dkt. No. 52.) The remaining claim in the Complaint relevant to the instant motion for summary judgment is against Defendant William Hellar for a RICO violation when Hellar allegedly made false claims with the San Diego District Attorney and the San Diego Sheriff regarding elder abuse and made false claims to mortgage regulators at the California Department of Corporations. (Compl. ¶ 6(c)(ii).)

**Factual Background**

William Hellar traveled to San Diego to interview Defendant Stefanie Ruiz of BC Lending for potential business of purchasing promissory notes. (Dkt. No. 89, Marshall Decl., Ex. A, Hellar Depo. at 20:3-19; Dkt. No. 76-2, Ballesteros Decl., Ex. A, Hellar Depot. at 25:24-25.) Upon request, Ruiz presented her license which indicated that she was with "BC lending dba Acclaim Financial Services." (Dkt. No. 76-2, Ballesteros Decl., Ex. A, Hellar Depo. at 31:3-20; Ex. B, Villa Depo. at 193:14-18.) Hellar confirmed that her license was valid in California. (Id., Ex. A, Hellar Depo. at 31:8-13.) Hellar then called the principal of Acclaim who verified that Ruiz was authorized to do business for Acclaim

---

[1] Defendant Gretchen Hellar is representing herself and answered the complaint. (Dkt. No. 25.) Defendants William Hellar and Diane Hellar, Hellar Charitable Remainder Trust are represented by counsel and answered the complaint. (Dkt. No. 26.) Defendant Michael Lusby has not answered and a default entered against him on November 2, 1010. (Dkt. No. 24.) Defendant Stephanie Ruiz has not been served.

1 and learned Villa got a "kickback" for each loan she sold. (Dkt. No. 76-2, Ballesteros Decl., Ex. A, Hellar Depo. at 32:1-10; 33: 12-25.) Hellar purchased a loan on the spot from her. (Id., Ex. A, Hellar Depo. at 51:18-22.)

Ruiz e-mailed Hellar and presented him with a new loan, the Kellar loan for $21,450. (Id., Ex. A, Hellar Depo. at 25:11-20; 45:18-46:2.) As to the Kellar loan, Ruiz asked Hellar to wire the money directly to her this one time since it was only $21,000. (Id. at 52:12-18; Ex. E.) Ruiz sent Hellar an e-mail stating that the loan documents were on the way to Hellar but the documents did not arrive and that was the last communication he received from her. (Id. at 50:13-51:12; Ex. D.)

Hellar contacted Villa and asked for the money. (Dkt. No. 76-2, Ballesteros Decl., Ex. A, Hellar Depo. at 65:21-66:2.) Villa told him that Ruiz would return the money the next day which did not happen. (Id.) Hellar continued to e-mail Mr. Villa in December 2007 and January 2008. (Id. at 66:9-16; 68:19-69:12.)

In January 2008, Hellar reported the incident to the San Diego Sheriff. (Dkt. No. 89, Marshall Decl., Ex. A, Hellar Depo. at 71:1-19.) He told the Sheriff that he was fearful that he had been defrauded out of his money by BC Lending and Villa. (Id.) Hellar also filed a complaint with the Department of Corporations regarding the misappropriation of his money. (Id. Ex. C.) The Hellars hired Attorney Michael Lusby and he filed a civil complaint in the San Diego Superior Court against the required $25,000 bond on Acclaim. (Dkt. No. 76-3, D's RJN No. 1.) Lusby made legal service on Villa via publication. (Id., RJN No. 3.) Lusby obtained a favorable judgment for the full $25,000. (Id., RJN No. 2.) In their opposition brief, Plaintiffs do not provide any factual background to support their opposition and have not provided any facts to directly dispute Defendant's facts.[2]

**Discussion**

Plaintiffs allege a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against Defendant William Hellar. Specifically, Plaintiffs allege there were RICO violations when William

---

[2] Plaintiff Villa filed a declaration in opposition to Defendant's motion for summary judgment. First, the Court notes that the facts in Plaintiff's declaration is not used to support the arguments in his opposition. Moreover, the facts presented do not address the facts presented by Hellar and do not create a genuine issue of material fact as to the RICO allegation in his complaint.

3

1  Hellar allegedly made false claims with the San Diego District Attorney and the San Diego Sheriff
2  alleging elder abuse and made false claims to mortgage regulators at the California Department of
3  Corporations.[3] (Compl. ¶ 6.) As such, Plaintiffs claim their mortgage business has been harmed
4  because of AFSI's inability to attract and retain clients due to the false allegations made by Plaintiffs.
5  (Id. ¶ 15.)

## A. Requests for Judicial Notice

Defendant filed a request for judicial notice as to nine documents. (Dkt No. 76-3.) These documents concern records from the San Diego Superior Court of California and this Court. (Id.) In their opposition, Plaintiffs also filed a request for judicial notice as to a Request for Dismissal filed in San Diego Superior Court (Dkt. No. 88.)

The Court may take judicial notice of facts that are "not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of court filngs and other matters of public record. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006). Both parties have not objected to each other's request for judicial notice. The Court concludes that these documents are appropriate for judicial notice. Accordingly, the Court GRANTS Defendant and Plaintiffs' requests for judicial notice.

## B. Legal Standard Pursuant to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[3]In his motion for summary judgment, Hellar states that there is a claim remaining regarding Hellar's filing a state court complaint without serving Plaintiff. However, in its order filed on June 7, 2011, the Court *sua sponte* dismissed the claims regarding service of process issues in the state court action against William Hellar based on the Rooker-Feldman doctrine. (Dkt. No. 52.)

4

1 party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**C.   Rooker-Feldman Doctrine**

Defendant argues that the Rooker-Feldman doctrine bars Plaintiffs' allegations against him. Plaintiffs contend that the allegations against Hellar do not directly or indirectly challenge the state court judgment and is not a collateral attack on the judgment.

The Rooker-Feldman[4] doctrine prevents the lower federal courts from exercising subject matter

---

[4]The Rooker-Feldman doctrine arose from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

5

jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Rooker-Feldman is a narrow doctrine and only applies in "limited circumstances." Lance v. Dennis, 546 U.S. 459, 464, 466 (2006) (citing Exxon Mobil, 544 U.S. at 291); Skinner v. Switzer, 131 S. Ct. 1290, 1297 (2011). District courts are courts of original, not appellate jurisdiction and Congress empowered only the United States Supreme Court to exercise appellate authority to modify or reverse a state court judgment. Rooker, 263 U.S. at 416.

The Ninth Circuit has held that Rooker-Feldman may be applicable when the parties do not directly contest the merits of a state court decision and the claims are a *de facto* appeal. Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008). A *de facto* appeal occurs when "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." Id. (quoting Bianchi v. Rylarrsdam, 334 F.3d 895, 898 (9th Cir. 2003)).

Under California law, a "dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." Boeken v. Philip Morris, USA, Inc., 48 Cal. 4th 788, 809 (2010) (for purposes of *res judicata*); Adler v. Vaicius, 21 Cal. App. 4th 1770, 1776 (1993) ("A voluntary dismissal with prejudice is a final determination on the merits."); Torrey Pines Bank v. Superior Court, 216 Cal. App. 3th 813, 819 (1989). Furthermore, a dismissal with prejudice following a settlement constitutes a final judgment on the merits. In re Estate of Redfield, 193 Cal. App. 4th 1526 (April 5, 2011) (for purposes of *res judicata*). A settlement agreement may constitute a state-court judgment for purposes of the Rooker-Feldman doctrine. See Sherrard v. Panazuelos, 2011 WL 1131523 at 2 (C.D. Cal. 2011); Wittich v. Wittich, 2006 WL 3437407 at 3 (E.D.N.Y. 2006) ("for purposes of Rooker–Feldman, because plaintiff now seeks to overturn the settlement, alleging that the Settlement Agreement violated his rights, the Court deems plaintiff a losing party in a state court action"); Green v. City of New York, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006) ("[C]ourts have treated settlement

6

agreements as final judgments for purposes of the Rooker-Feldman doctrine."); Allianz Ins. Co. v. Cavagnuolo, 2004 WL 1048243 at 6 (S.D.N.Y. 2004) (settlement agreement may constitute a final judgment under Rooker-Feldman).

On October 1, 2008, Plaintiffs William R. and Gretchen Hellar Charitable Remainder Unitrust brought a state court action against Stephanie Ruiz, William Villa, Acclaim and ACIC for eight causes of action relating to the alleged fraud committed on Plaintiffs. (Dkt. No. 75-3, Ds' RJN No. 1.) In the state court complaint, Plaintiffs contend that Villa and his companies, including Ruiz, defrauded Plaintiffs of $21,450. (Id.) Plaintiffs intended to purchase a loan from Acclaim through Ruiz, who was alleged to be doing business as Acclaim. (Id.) Plaintiffs sent $21,450, by wire, to Ruiz for the purchase of a loan. (Id. ¶ 13.) Ruiz absconded with the funds without completing the loan documentation. (Id. ¶ 19.) When Plaintiffs demanded return of the funds, William Villa promised the return of the money. (Id. ¶ 20.) However, payment was never made. (Id. ¶ 27.)

In the state court case, Plaintiffs also brought a cause of action against ACIC for the foreclosure on a surety bond issued on behalf of Acclaim Financial Services. (Id.) On October 13, 2009, ACIC settled the foreclosure claim with Plaintiffs William R. and Gretchen Hellar Charitable Remainder Unitrust in the amount of $23,000. (Dkt No. 76-3, D's RJN No. 5 at 87.) In consideration of the settlement, William Hellar and Gretchen Hellar Charitable Remainder Trust released ACIC and assigned all of their claims against Defendants to ACIC. A Request for Dismissal of the Complaint against all Defendants with prejudice was filed. (Dkt No. 88, P's RJN.)

On January 29, 2010, ACIC filed a cross-complaint against Acclaim, William Villa and Patricia Villa for breach of contract, indemnity and declaratory relief. (Dkt. No. 15-2, ACIC's RJN No. 6.) The cross-complaint defendants William and Patricia Villa and Acclaim did not respond so default was entered against them (Dkt No. 76-3, D's RJN No. 2.) Subsequently, on June 18, 2010, the superior court entered default judgment on ACIC's cross-complaint against Acclaim, William Villa and Patricia Villa in the amount of $36,050.33. (Id., RJN No. 2.) In the state court action, ACIC was represented by Collin Cook and Lanak & Hanna who were defendants in the instant case. The Hellars were represented by Michael Lusby, who is also a defendant in this case.

1    In the prior order granting in part and denying in part Defendants' motion to dismiss, the Court determined that there was a state court judgment for purposes of Rooker-Feldman. Under the terms of the settlement with ACIC, the Hellars dismissed their case against all Defendants, including the Villas with prejudice.

In the instant motion, Defendant summarily contends that the RICO claim, regarding complaints made to law enforcement by Hellar based on Ruiz's theft of his monies while operating under Villa's license, is a collateral attack on the Hellar state court judgment. In the state court case, the Hellars released all their claims against Defendants Villa, Acclaim and ACIC to ACIC in consideration of $23,000. Without providing specifics, Hellar claims his complaints to law enforcement and the Department of Corporations would require this Court to consider issues "inextricably intertwined" with the Hellar state court action. (D's motion at 8.) Plaintiffs argue that the RICO claims do not directly or indirectly challenge the state court judgment and is not a collateral attack on the judgment.

It is not clear how allegedly false allegations of elder abuse made to the San Diego Sheriff and the San Diego District Attorney and false claims made to mortgage regulators at the California Department of Corporations would cause the Court to consider the dismissal of the state court action against Villa in consideration of a settlement deal with ACIC. A court's ruling on Plaintiff's claim of false allegations before law enforcement and the Department of Corporations would not affect the settlement the Hellars made with ACIC where the Hellars dismissed their case against the Villas.

Defendant has not met his burden of demonstrating the absence of any genuine issue of material fact that the Rooker-Feldman doctrine applies to this case. Accordingly, the Court DENIES Defendant Hellar's motion for summary judgment under the Rooker-Feldman doctrine.

**D.    Noerr-Pennington Doctrine**

Defendant also moves for summary judgment arguing that the Noerr-Pennington doctrine bars the RICO claim against him. Plaintiff argues that there is a material issue of fact regarding whether the agency filings were a sham.

The Noerr-Pennington doctrine originates from the First Amendment's guarantee of the "right of the people . . . to petition the Government for a redress of grievances." Sosa v. DIRECTV, Inc., 437

8

F.3d 923, 929 (9th Cir. 2006) (<u>citing</u> U.S. Const. amend I.)  "[T]hose who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." <u>Id.</u>  Although the doctrine arises in the antitrust context, the doctrine applies to cases outside the antitrust field.  <u>Id.</u> at 930.  Noerr-Pennington applies to RICO cases.  <u>Id.</u> at 942.

In addition, the right to petition includes access to courts as the Supreme Court "extended Noerr-Pennington immunity to the use of 'the channels and procedures of state and federal . . . courts to advocate . . . causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors.'"  <u>Id.</u> at 929-30 (<u>citing</u> <u>Cal. Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510-11 (1972)).  In addition, the doctrine has been applied to the approach of citizens to administrative agencies.  <u>Cal. Motor Transport Co.</u>, 404 U.S. at 510 ("The right to petition extends to all departments of the Government.").

The Ninth Circuit has further held that the Noerr-Pennington doctrine applies to citizen communications with police.  <u>Forro Precision, Inc. v I.B.M. Corp.</u>, 673 F.2d 1045, 1060 (9th Cir. 1982); <u>but see</u> <u>Tisdale v. City of Los Angeles</u>, 617 F. Supp. 2d 1003, 1004 (C.D. Cal. 2009) (claims arising from an alleged citizen's arrest undertaken by Greyhound's security guard not protected by Noerr-Pennington doctrine and holding that citizen's arrests are not immune under Noerr-Pennington doctrine).  The Court in <u>Forro Precision</u> explained that, "[w]e do not liken an approach to the police for aid in apprehending wrongdoers to political activity. However, we think that the public policies served by ensuring the free flow of information to the police, although somewhat different from those served by Noerr-Pennington, are equally strong. Encouraging citizen communication with police does not generally promote the free exchange of ideas, nor does it provide citizens with the opportunity to influence policy decisions . . . Nonetheless, it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information." <u>Id.</u>

In <u>Forro Precision</u>, Defendant IBM had approached the Police Department to allege that one of its competitors had stolen trade secrets.  Consequently, the police searched the competitor's premises and, at the police department's request for assistance, IBM aided in the search.  <u>Forro Precision, Inc.</u>, 673 F.2d at 1054.  The Ninth Circuit held that neither IBM's communication with the police nor its

9

1  assistance with the search could be used to establish IBM's specific intent to engage in anti competitive
2  conduct because "it would be difficult indeed for law enforcement authorities to discharge their duties
3  if citizens were in any way discouraged from providing information." Id. at 1060.

4        The sham exception to the doctrine applies when "a mere sham to cover what is actually nothing
5  more than an attempt to interfere directly with the business relationships of a competitor . . . ." Noerr,
6  365 U.S. at 144. In Noerr Pennington, the Court acknowledged that "[t]here may be situations in which
7  a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to
8  cover what is actually nothing more than an attempt to interfere with the business relationships of a
9  competitor, and the application of the Sherman Act would be justified." Id. In City of Columbia v.
10 Omni Outdoor Advertising, Inc., 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), the Court
11 explained: "[t]he 'sham' exception to Noerr encompasses situations in which persons use the
12 governmental process-as opposed to the outcome of that process-as an anticompetitive weapon. A
13 classic example is the filing of frivolous objections to the license application of a competitor, with no
14 expectation of achieving denial of the license but simply in order to impose expense and delay. A
15 "sham" situation involves a defendant whose activities are not genuinely aimed a procuring favorable
16 government action at all, not one who genuinely seeks to achieve his governmental result, but does so
17 through improper means." Id. at 380 (citations and quotation marks omitted). Sham litigation exception
18 requires a showing that the lawsuit is objectively baseless and brought for an improper purpose. Sosa,
19 437 F.3d at 938.

20       In this case, Plaintiffs claim a RICO violation against William Hellar for allegedly making false
21 allegations with the San Diego District Attorney and the San Diego Sheriff alleging elder abuse and
22 making false claims to mortgage regulators at the California Department of Corporations. Defendant
23 argues that the Noerr Pennington doctrine bars the RICO claim. Defendant approached the San Diego
24 Sheriff and San Diego Attorney General's office for alleged elder abuse and approached the mortgage
25 regulators at the Department of Corporations. The Ninth Circuit has held that the Noerr-Pennington
26 doctrine applies to citizen communications with police and to "any department of the government for
27 redress. . . ." Sosa, 437 F.3d at 929. Therefore, the communications with the San Diego Sheriff and San

1  Diego Attorney General and the California Department of Corrections are protected under Noerr-
2  Pennington. Without any factual support, Plaintiffs summarily argue that there is material issue of fact
3  regarding whether the agency filings were a sham in an attempt to interfere with Villa's business.
4  Therefore, Plaintiffs have failed to create a genuine issue of material fact that the sham exception applies
5  to this case. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the
6  RICO claim based on the Noerr-Pennington doctrine.

**E.  Litigation Privilege**

Defendant argues that summary judgment should be granted based on California Civil Code section 47(b). California Civil Code section 47(b) provides for absolute immunity for communications made in the course of litigation. Rubin v. Green, 4 Cal. 4th 1187, 1193 (1993). Section 47(b) provides for a litigation privilege for judges, attorneys and witnesses for "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom, and no function of the court or its officers is involved." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990). It provides for absolute shield from liability or suit for all claims except malicious prosecution. Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118 (1990). A privileged publication or broadcast is one made in the proper discharge of an official duty, in any "(1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure." Cal. Civil Code § 47(b).

Courts have held that the RICO statute preempts the state litigation privilege. Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008) (citing Martinez v. California, 444 U.S. 277, 284 (1980) (holding that a 42 U.S.C. § 1983 claim preempts the state litigation privilege)); Menjivar v. Trophy Props., IV DE, LLC, No. C06-03086 SI, 2006 WL 2884396, at *16 (N.D. Cal. 2006) (explaining that there exists no authority for applying California's litigation privilege to RICO claims and holding that litigation privilege does not apply to federal RICO claims); see also Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 851 (9th Cir. 2004) (holding that

11

California's litigation privilege did not bar retaliation claim under ADA); OEI v. N Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) (holding that California's litigation privilege did not grant immunity in connection with FDCPA claim); Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996) (§ 1983 claims).

Here, Defendant moves for summary judgment claiming the state litigation privilege under California Civil Code section 47(b). However, RICO preempts the state litigation privilege. Accordingly, the Court DENIES Defendant's motion for summary judgment based on the state litigation privilege pursuant to California Civil Code section 47(b).

**F.     Racketeer Influenced and Corrupt Organizations Act**

Defendant argues that Plaintiffs cannot state a valid RICO claim because there is no RICO enterprise, no pattern of racketeering activity and no threat of any continuing activity. Plaintiffs do not provide an opposition on the RICO claim against William Hellar.

18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A prima facie case for RICO under § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P. R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Plaintiff must also show harm of a specific business or property interest by the racketeering conduct. Id.; Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005). "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code. See 18 U.S.C. § 1961(1).

**1.     Enterprise**

First, Defendant argues that Plaintiffs have not alleged or shown a RICO "enterprise" as to the claim regarding Defendant Hellar's false allegations to the Department of Corporations, San Diego Sheriff and the San Diego District Attorney.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person' and (2) an 'enterprise' that is not simply the same 'person' referred to by a

12

1  different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

2  Here, Plaintiff has not provided an opposition to create a genuine issue of material fact that there
3  was an enterprise. The allegation claims that Hellar "utilized fraud and deceit by making false claims
4  San Diego Sheriff and San Diego District Attorney in mid January 2008 [See Exhibit 5] alleging wrong
5  doing by plaintiff AFSI and by making false claims to mortgage regulators at the California Department
6  of Corporations on January 29, 2008, [See Exhibit 1] and, none of the claims were substantiated by said
7  agencies; . . . ."  (Compl. ¶ 6(c).)

8  It does not appear there is a person and an enterprise making these false allegations. Individual
9  William Hellar along with his wife, Gretchen Hellar made complaints to the San Diego District Attorney
10 and the San Diego Sheriff's Office and to the California Department of Corporations. No enterprise is
11 alleged or shown by Plaintiffs. Accordingly, Plaintiff has not shown a genuine issue of material fact as
12 to whether there was an enterprise under RICO.

13 **2.    Pattern of Racketeering Activity**

14 Defendant also argues that Plaintiffs have failed to allege or demonstrate any "pattern of
15 racketeering" or any threat of continued criminal activity. He contends that Plaintiffs have not shown
16 that the complaints to authorities were untrue or that the actions were indictable. In addition, Plaintiffs
17 have failed to allege any threat of continued activity as the complained acts have already been completed.

19 A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of
20 which occurred after the effective date of this chapter and the last of which occurred within ten years
21 . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(4). The United States
22 Supreme Court in H.J., Inc. v Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989), defined the term
23 "pattern" in the RICO statute as "showing of a relationship between the predicates" and of "the threat
24 of continuing activity." 492 U.S. 229, 239 (1989) (citing Legislative History, S. Rep. No. 91-617 at 158
25 (1969). "It is this factor of *continuity plus relationship* which combines to produce a pattern." Id.
26 (citation omitted). As to continuity, a plaintiff . . . must prove continuity of racketeering activity, or its
27 threat." Id. at 241. Continuity applies to "a closed period of repeated conduct or to past conduct that by

13

its nature projects into the future with a threat of repetition." <u>Id.</u> at 241. A plaintiff may show continuity over a closed period by "proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." <u>Id.</u> at 242. In addition, a racketeering activity is any act indictable under several provisions of Title 18. <u>See</u> 18 U.S.C. § 1961(1).

Not only have Plaintiffs not alleged or shown a pattern of racketeering activity or any threat of continued criminal activity but they have not provided an opposition providing evidence that there are genuine issues of disputed facts. Based on the above, the Court GRANTS Defendant William Hellar's motion for summary judgment as to the RICO cause of action.

**G.     Evidentiary Objections**

In his reply, Defendant filed objections to Plaintiff William Villa's response and supporting evidence of disputed facts and responses to Defendant William Hellar's separate statement of undisputed material facts in support of motion for summary judgment or in the alternative summary adjudication of issues. (Dkt. No. 86-2; 93-1.) He objects because Plaintiff did not file or serve "objections to Hellar's Request for Judicial Notice." (<u>Id.</u>) In addition, Defendant filed objections to evidence submitted by William Villa in opposition to Hellar's motion for summary judgment. (Dkt. No. 93-2.) Specifically, he objects to certain paragraphs in William Villa's declaration. (<u>Id.</u>)

The Court notes Defendant's objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider them.

**H.     Defendant's Motion for Sanctions**

On May 22, 2012, Defendant filed a motion for sanctions against Plaintiff's counsel for the prosecution of a frivolous and baseless Complaint.[5] He claims that Plaintiffs have no factual or legal

---

[5] In his reply, Defendant argues that the Court should not consider Plaintiffs' opposition since it was not timely filed. Plaintiffs' opposition was to be filed on July 2, 2012 but it was filed on July 3, 2012 instead. As part of his opposition, Plaintiffs requested that the Court consider its late opposition because they inadvertently failed to include this request in their earlier *ex parte* application for extension of time to file a late opposition to the motion for summary judgment. Good cause appearing, the Court

14

evidentiary basis or support for their allegations. He also argues that sanctions should also be imposed based on the Court's inherent power. Plaintiffs oppose arguing that Defendant has failed to comply with the twenty-one day "safe harbor" provision under Rule 11 and the Court should not award sanctions based on its inherent authority. Plaintiffs also seek attorney's fees for the filing of the motion for sanctions in bad faith.

Rule 11 has strict procedural requirements regarding when a party should move for sanctions under Rule 11. See Radcliffe v. Rainbow Const. Co., 254 F.3d 772, 789 (9th Cir. 2001) (citing Fed. R. Civ. P. 11(c)(1)(A)). The moving party is required to serve its Rule 11 motion on the plaintiffs with a demand for retraction of the allegedly offending allegations and allow the plaintiffs at least 21 days to retract before filing the motion with the court. Id. In Radcliffe, the Ninth Circuit reversed the district court's award of Rule 11 sanctions because Defendant did not comply with the procedural requirements under Rule 11(c)(1)(A). Id. at 789. The district court concluded that a literal application of the safe harbor provision was unnecessary because Plaintiff had been given adequate notice and an opportunity to withdraw the allegations when its filed a rule 11 motion in response to plaintiff's first amended complaint. Id. The Ninth Circuit reversed the district court's award of Rule 11 sanctions and stated that Rule 11(c)(1)(A)'s "safe harbor" provision is mandatory. Id. (citing Barber v. Miller, 146 F.3d 707, 710-11 (9th Cir. 1998).

Plaintiffs argue that Defendant failed to serve him with a copy of the motion 21 days prior to filing the motion with the Court. Defendant contends that the safe harbor provision was met because Plaintiffs had enough time to evaluate and dismiss the complaint when Hellar notified Plaintiffs orally and in writing as early as November 2011 about his intention to seek sanctions against Plaintiffs and his counsel if they did not dismiss the frivolous lawsuit.

As the Ninth Circuit has held, the 21 day "safe harbor" provisions under Rule 11 are mandatory. See Radcliffe, 254 F.3d at 789. Defendant impliedly admits that he did not comply with the 21 day "safe harbor" provision. Accordingly, the Court DENIES Defendant's motion for sanctions.

---

GRANTS Plaintiff's request to file a late opposition.

15

Even if Defendant complied with the procedural "safe harbor" requirement, Defendant has not shown that Plaintiffs and/or Plaintiffs' counsel should be subject to Rule 11 sanctions. Rule 11 states, in pertinent part, that when an attorney or an unrepresented party presents a signed paper to a court, that person is certifying that to the best of his or her "knowledge information, and belief, formed after an inquiry reasonable under the circumstances. . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b).

The Ninth Circuit has provided a standard to determine the kind of conduct or neglect that may trigger sanctions under Rule 11. Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir.1986), abrogated on other grounds by, Cooter & Gell v. Hartmarx, Corp., 496 U.S. 384 (1990). Rule 11 requires the imposition of sanctions where an attorney or unrepresented party has signed pleadings that are frivolous or without merit or has filed a pleading for an improper purpose. Id. at 830-32. Rule 11 is governed by an objective standard of reasonableness. Id. at 830. "Our cases have established that sanctions [under Rule 11] must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'" Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). Rule 11 sanctions must be assessed if the papers filed with the court is "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." Zaldivar, 780 F.2d at 831. The second factor of "improper purpose" requires a determination whether the pleading was filed to "harass or to cause unnecessary delay or needless increase in the cost of litigation." Id.

Here, Defendant seeks sanctions against Plaintiffs arguing that the complaint was filed for harassment and done in bad faith once Marshall, Plaintiffs' attorney, substituted in as counsel. After a review of the case, the Court concludes that the complaint is not sufficiently frivolous to warrant Rule 11 sanctions. Accordingly, the Court DENIES Defendant's motion for Rule 11 sanctions. The Court also denies Plaintiff's request for attorney's fees incurred in defending the motion.

**Conclusion**

Based on the above, the Court **ORDERS** the following:

1) The Court **GRANTS** Defendant's motion for summary judgment as to the remaining RICO claim pursuant to Federal Rule of Civil Procedure 56;

2) The Court **GRANTS** both parties' request for judicial notice; and

3) The Court **DENIES** Defendant's motion for sanctions.

IT IS SO ORDERED.

DATED: August 3, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

17